The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Robert Jay FOSTER, Defendant–Appellee.

No. 89SA293.

Supreme Court of Colorado, En Banc.

March 19, 1990.

---

Stephen K. ErkenBrack, Dist. Atty., and Frank J. Daniels, Chief Deputy Dist. Atty., Grand Junction, for plaintiff-appellant.

Robb, Skinner, Achziger & Nugent, Edward J. Nugent, Grand Junction, for defendant-appellee.

Chief Justice QUINN delivered the Opinion of the Court.

The People in this interlocutory appeal challenge the district court's suppression of cocaine seized from the defendant, Robert Jay Foster, during a search of his person at the Mesa County Jail following his warrantless arrest for theft of an all-terrain vehicle (hereinafter referred to as "motorcycle"). The district court suppressed the evidence because the prosecution failed to establish probable cause for the defendant's arrest. We affirm the suppression ruling.

The defendant is presently charged in the district court of Mesa County in a two-count information with possession of, and possession with intent to distribute, a Schedule II controlled substance, namely cocaine. The charges stem from the seizure of two bindles of cocaine taken from the defendant's wallet and front pocket during routine booking procedures at the county jail following the defendant's arrest on December 30, 1988. After entering a not guilty plea, the defendant filed a motion to suppress the cocaine, claiming that it was seized as a result of an arrest unsupported by probable cause.

The following facts were established at the hearing on the defendant's suppression motion. On December 30, 1988, at approximately 7:30 p.m., Martin Martinez was driving a 1981 Ford pickup truck, in which the defendant was riding as a passenger, and stopped for a red traffic signal at an intersection in Mesa County, Colorado. Colorado State Patrolman Carey Cox was at the same intersection and observed that the Ford pickup truck had a cracked windshield and did not have a light to illuminate the rear license plate. The officer approached the Martinez vehicle and asked Martinez for his driver's license, registration, and proof of insurance. Martinez was unable

to immediately locate the vehicle registration and proof of insurance, but shortly found his driver's license. After Officer Cox made a computer check of Martinez' driver's license, Martinez located the registration for the pickup truck and showed it to the officer. The registration indicated that he was the owner of the pickup truck and listed an address in Pagosa Springs, Colorado. Officer Cox noticed a motorcycle in the rear of the pickup truck and asked Martinez whether he owned the motorcycle. Martinez stated that he did, and the officer asked for permission to examine it. Martinez consented to the examination.

Officer Cox obtained a vehicle identification number from the motorcycle and radioed for a computer check to determine whether it was stolen. The officer received an electronic message stating that the vehicle was reported stolen in Colorado Springs in April 1988 and was still listed as stolen. Officer Cox then placed Martinez and the defendant under arrest for the theft of the motorcycle. After being advised of his *Miranda* rights, the defendant told Officer Cox that, so far as he knew, Martinez had borrowed the motorcycle from a friend in Colorado Springs a few months previously.[1]

Following his arrest, the defendant was transported to the Mesa County Jail where he was searched as part of a routine booking procedure. During the search a packet containing a crystalline substance was recovered from the defendant's wallet and a similar packet was taken from his front pocket. When the officer conducting the search asked the defendant what the substance was, the defendant responded, "Coke." The next day the Colorado Springs Police Department informed Officer Cox that the motorcycle previously reported as stolen had actually been recovered in October 1988 and was no longer listed as stolen.

Based on the evidence presented at the suppression hearing, the district court suppressed the two packets of cocaine taken from the defendant during the search at the county jail. The court ruled that Officer Cox properly stopped the pickup truck and conducted an investigation at the scene of the stop, that he appropriately checked the status of the motorcycle, and that on the basis of the information received during his investigation the officer had probable cause to arrest Martinez, the driver of the pickup truck, for the theft of the motorcycle. The court, however, concluded that there was no probable cause to arrest the defendant, ruling in pertinent part as follows:

> The Court has no question as to the good faith of the officers in believing that the A.T.V. [all-terrain vehicle] was stolen, based upon the records, their teletype messages, but this was primarily with reference to Mr. Martinez. There's nothing to show that Mr. Foster had any knowledge of the actual theft or knowledge of the stolen nature of the vehicle. The only statement is, as I recall, is that Mr. Martinez had borrowed it from some friend.

> \* \* \* \* \* \*

> The arrest of Mr. Martinez, this Court feels[,] based upon the limited information that has come out in this Foster hearing, ... was perfectly proper and based upon probable cause. But the extremely thin basis of the arrest of the ... other occupant of the vehicle is the problem that the Court has with this case entirely. There was no basis.[2]

1. Martinez, following his arrest, gave Officer Cox a piece of paper with names and telephone numbers and told the officer that these persons would resolve any confusion regarding his ownership of the motorcycle.

2. The evidence at the suppression hearing established that an officer seized a bindle of cocaine from Michael Martinez after his arrest and that Martinez thereafter consented to the search of his pickup truck. The officer conducting the search of the truck found several bindles of cocaine in a cassette tape box located in a small storage space between the driver's seat and the passenger seat of the pickup truck. The defendant's suppression motion in the instant case, however, did not seek to suppress those items of evidence. Moreover, the district court did not address that aspect of the case, and we express no opinion on it.

In urging reversal of the district court suppression ruling, the People claim that the information obtained by Officer Cox concerning the stolen nature of the motorcycle, although mistaken, was nonetheless obtained in good faith during a valid investigatory stop, and that such information provided the officer with probable cause to arrest both Michael Martinez, the owner and operator of the pickup truck, and the defendant, the passenger in the pickup truck. We reject the People's claim.

Where, as here, an arrest has been effectuated without a warrant, the prosecution bears the burden of establishing probable cause for the arrest. *E.g.*, *People in the Interest of S.J.F.*, 736 P.2d 29 (Colo.1987); *People v. Rayford*, 725 P.2d 1142 (Colo.1986). Probable cause in the case of a warrantless arrest requires that an arresting officer have reasonable grounds to believe that the person arrested has committed or is committing a crime. *E.g.*, *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *People v. Tufts*, 717 P.2d 485, 491 (Colo.1986); *People v. Tottenhoff*, 691 P.2d 340, 343–45 (Colo.1984). If Officer Cox had probable cause to arrest the defendant, then the search of the defendant's person at the county jail would be constitutionally valid as an inventory search incident to a lawful arrest. *E.g.*, *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983); *People v. Inman*, 765 P.2d 577 (Colo.1988).

Because cases involving probable cause for a warrantless arrest arise in an infinite variety of factual situations and turn ultimately on a consideration of the totality of circumstances, rarely will there be a prior decision that is factually identical to the case in question. The most that can be reasonably expected in this area of the law is that a prior decision involved facts of such close similarity as to place the case at issue within the core of the prior precedent. We believe that the decision of the United States Supreme Court in *United States v. DiRe*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed.

210 (1947), and this court's decision in *Mora v. People*, 178 Colo. 279, 496 P.2d 1045 (1972), provide the controlling precedent for resolving this case.

In *DiRe*, the defendant was riding as a passenger in the front seat of an automobile operated by the driver Buttitta, who was suspected of selling counterfeit gasoline ration coupons, and a police informer was riding as a passenger in the back seat. When approached by police officers, the informer in the back seat had gasoline ration coupons in his hand and stated that he had obtained them from the driver. The officers then made a warrantless arrest of the driver and DiRe. At the police station, DiRe was searched and counterfeit gasoline coupons were found on his person. DiRe was convicted of possession of counterfeit gasoline coupons, but the United States Supreme Court reversed his conviction on the basis that the stationhouse search was the product of an illegal arrest. The Court stated that even if there had been probable cause to search the driver's vehicle, the basis for such search would not have conferred an incidental right to search DiRe simply because he happened to be present in the vehicle. 332 U.S. at 581, 68 S.Ct. 222. Nor, in the Court's view, was the stationhouse search of DiRe justified as incident to a lawful arrest for participating in a conspiracy to distribute the counterfeit coupons:

> The argument that one who "accompanies a criminal to a crime rendezvous" cannot be assumed to be a bystander, forceful enough in some circumstances, is farfetched when the meeting is not secretive or in a suspicious hide-out but in broad daylight, in plain sight of passers-by, in a public street of a large city, and where the alleged substantive crime is one which does not necessarily involve any act visibly criminal. If DiRe had witnessed the passing of papers from hand to hand, it would not follow that he knew they were ration coupons, and if he saw that they were ration coupons, it would not follow that he would know them to be counterfeit. Indeed it appeared at the trial to require an expert to

establish that fact. Presumptions of guilt are not likely to be indulged from mere meetings.

332 U.S. at 593, 68 S.Ct. at 228.

This court followed *DiRe* in *Mora v. People*, 178 Colo. 279, 496 P.2d 1045 (1972). In *Mora*, two police officers received a tip from an informer that Fred Vigil was driving a car containing stolen clothing and that Vigil was taking the clothing "to 32nd and Tejon to be disposed of." The officers proceeded to that location and observed Vigil sitting in the driver's seat of his car, which was parked at a curb near a liquor store. Moments later the defendant Mora came out of the liquor store, entered Vigil's car, and both Vigil and Mora drove off. The officers stopped Vigil's car a few blocks away, opened the trunk, and observed the stolen clothes described by the informer inside the trunk. The officers immediately arrested Mora and Vigil for burglary and receiving stolen property. At the stationhouse Mora threw a matchbook containing a partially smoked marihuana cigarette onto the parking lot pavement. The police seized the marihuana cigarette, and Mora was subsequently convicted of possession of a narcotic drug. In reversing Mora's conviction on the basis that there was no probable cause for his arrest, this court stated:

> Nor was anything done after the officers arrived on the scene to justify Mora's arrest. The record is devoid of evidence to show that the officers observed any criminal activity on the part of Mora or that Mora was connected in any way with disposition of the allegedly stolen merchandise. Moreover, the record fails to reveal that Mora was even aware of the presence of the clothing which was found in the trunk of Vigil's car. *See People v. Nelson*, 172 Colo. 456, 474 P.2d 158 (1970).

> The only fact linking Mora to either of the crimes for which he was arrested was his physical presence in Vigil's car. Mora's physical presence in the automobile, in and of itself, did not provide probable cause to arrest. *United States v. DiRe*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). As we stated in *People v. Feltch*, [174 Colo. 383, 483 P.2d 1335 (1971)]: "Guilt by association has never been an acceptable rationale and it does not constitute probable cause to arrest." *See generally, Gallegos v. People*, 157 Colo. 173, 401 P.2d 613 (1965); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

. . . . .

> Having arrested Mora illegally, the prosecution cannot now claim that the evidence obtained as a result of the arrest need not be suppressed because it was abandoned. *Rios v. United States*, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960).

178 Colo. at 282, 496 P.2d at 1047.

Both *DiRe* and *Mora* dispel the notion that the defendant's mere presence as a passenger in the Ford pickup truck, which was owned and operated by Martinez and ostensibly was transporting a stolen motorcycle in the back of the truck, provided Officer Cox with probable cause to arrest the defendant for a crime relating to the motorcycle. Moreover, the fact that the defendant was aware of the motorcycle in the back of the pickup truck did not give Officer Cox reasonable grounds to believe that the defendant knew that the motorcycle was stolen property.

As in *Mora*, the record in this case is devoid of evidence to show that Officer Cox "observed any criminal activity on the part of [the defendant] or that [the defendant] was connected in any way with the disposition of the allegedly stolen merchandise." *Mora*, 178 Colo. at 282, 496 P.2d at 1047. Indeed, any finding of probable cause in this case would be irreconcilable with the long-standing principle that probable cause requires reasonable grounds to believe that the *person arrested* has committed or is committing a crime.[3]

---

**3.** The People, relying on *Wells v. People*, 197 Colo. 350, 592 P.2d 1321 (1979), argue that Officer Cox could infer that the defendant stole the motorcycle from the fact that it was in the

**830**

The People urge us to apply the good faith exception to the exclusionary rule and uphold the arrest and subsequent search as the product of a "good faith mistake." Section 16-3-308(1), 8A C.R.S. (1986), states that evidence otherwise admissible in a criminal proceeding shall not be suppressed if the court determines that the evidence was seized as a result of a "good faith mistake." A "good faith mistake" means "a reasonable judgmental error concerning the existence of facts or law which if true would be sufficient to constitute probable cause." § 16-3-308(2)(a), 8A C.R.S. (1986). The People's reliance on the good faith exception is misplaced.

The statutory good faith exception to the exclusionary rule has no application where, as here, the mistaken information, even if true, along with the other information relied upon by the officer in making an arrest, did not rise to the level of reasonable grounds to believe that the defendant committed or was committing a crime. Officer Cox, as the district court ruled, had the right to rely on the information that the motorcycle had been reported as stolen and to act on this mistaken information in arresting Martinez, the owner and operator of the pickup truck, for the theft of the motorcycle. However, this mistaken information, even if true, as well as the other information known to Officer Cox, did not provide the officer with probable cause to believe that the defendant, who was simply a passenger in the Martinez pickup truck, had stolen the motorcycle, had knowingly received stolen property, or had conspired with Martinez to commit a criminal offense relating to the motorcycle.

The suppression ruling is accordingly affirmed.

---

exclusive and joint possession of both the defendant and Martinez, the owner and operator of the Ford pickup truck. We acknowledge that under some circumstances, "joint" possession of stolen goods may be considered "exclusive" as to all occupants of the same vehicle for purposes of inferring that the occupants stole the goods jointly possessed. For example, in *People v. Haggart*, 188 Colo. 164, 533 P.2d 488 (1975), an eyewitness saw two men walk out of a store after an apparent burglary and gave the police a license number and description of the car in which the two men drove away. A highway patrolman spotted the vehicle, and, while following it, observed objects being thrown out of the window on the driver's side. The defendant was driving when the patrolman stopped the car, and the car owner was in the passenger seat. The objects thrown from the car were later retrieved and identified as a pocket watch and a wrist watch taken from the burglarized store from which the individuals were seen exiting. The defendant was convicted of burglary, and this court affirmed his conviction. In re-jecting the defendant's claim that the evidence was insufficient to support his conviction because the stolen goods were not found in his "exclusive" possession but rather were in the "joint" possession of both the defendant and the car owner, we stated: "The 'joint' possession of stolen goods may be considered 'exclusive' to all occupants of the same car, particularly when the driver throws some of them out of his side of the car, as Haggart did." 188 Colo. at 168, 533 P.2d at 491.

The facts in the instant case are not remotely similar to those in *Haggart*. So far as the prosecution's evidence shows, the defendant neither did anything nor said anything that indicated he had knowledge that the motorcycle was stolen property. On the contrary, the defendant told Officer Cox that he believed Michael Martinez had recently borrowed the motorcycle from a friend in Colorado Springs, and this statement, so far as Officer Cox was able to recall, was made after the defendant had already been placed under arrest.